IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EDWARD D. IOLI TRUST and GENERAL TRAFFIC CONTROLS, INC., Plaintiffs, v. AVIGILON CORPORATION, *et al.*, Defendants. | § § § § § § § § § | CIVIL ACTION NO. 2:10-cv-605-JRG |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs Edward D. Ioli Trust and General Traffic Controls, Inc. (collectively "Plaintiffs") Emergency Motion to Compel Source Code and Document Production, filed October 25, 2012 (Dkt. No. 263) ("Motion"). The Court having considered same finds that the Motion should be **GRANTED** for the reasons set forth below.

I. **Factual and Procedural Background**

On December 30, 2010, Plaintiffs filed suit against Defendants Image Sensing Systems, Inc., CitySync Technologies, Inc., Coban Technologies, Inc., Vigilant Video, Inc. and Elsag North America, LLC, alleging infringement of U.S. Patents Nos. 7,382,277 and 7,791,501. Per mediation held on August 29, 2012, Plaintiffs settled with all defendants except Vigilant Video, Inc. ("Vigilant"). Plaintiffs then served Vigilant with their First Set of Document Requests on September 4, 2012. Plaintiffs assert that up until September 4, 2012 Vigilant had produced 362 pages of documents, which did not include any source code pursuant to P. R. 3-4(a). (Dkt. No. 263 at 3.) Vigilant does not dispute this point—or that the deadline for complying with P. R. 3-4(a) was February 2, 2012—in its response or sur-reply to the Motion. (*See* Dkt. Nos. 271 and 275.) Plaintiffs subsequently initiated a series of communications with Vigilant, beginning September 6, 2012, related to Plaintiffs' First Set of Document Requests and Vigilant's disclosure

1

obligations pursuant to P. R. 3-4(a). On October 25, 2012, Plaintiffs filed the present Motion seeking an order compelling Vigilant "to produce source code as required by P. R. 3-4(a) and to produce documents pursuant to Plaintiffs' First Set of Requests for Production." (*See* Dkt. No. 263 at 1.)

## II. Discussion

The rules of discovery are accorded a broad and liberal application to affect their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). "A district court has broad discretion in all discovery matters . . . ." *Beattie v. Madison County Sch. Dist.,* 254 F.3d 595, 606 (5th Cir. 2001) (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.,* 213 F.3d 841, 855 (5th Cir. 2000)); *see also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 220 (5th Cir. 2000). The party requesting discovery may move to compel the disclosure of any materials requested so long as such discovery is relevant and otherwise discoverable. *See* Fed. R. Civ. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("Federal Rule of Civil Procedure 37(a)[(3)(B)(iii) and (iv)] empowers the court to compel the production of documents . . . upon motion by the party seeking discovery."). The moving party bears the burden of showing that the materials and information sought are "relevant to any party's claim or defense" or "appear[] reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1); *Knight*, 241 F.R.D. at 263. Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to demonstrate why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive. *See, e.g.*, *SSL Services, LLC v. Citrix Systems, Inc.*, 2010 U.S. Dist. LEXIS 11470, 2010 WL 547478 at *2 (E.D. Tex. Feb. 10, 2010) (citing *Spiegelberg Mfg., Inc. v. Hancock*, 2007 U.S. Dist. LEXIS 88987, 2007 WL 4258246

at *1 (N.D. Tex. Dec. 3, 2007)).

Here, Plaintiffs move to compel production of (a) source code pursuant to P. R. 3-4(a) and (b) documents in response to Plaintiffs' First Set of Requests for Production.

### a. Production of Source Code Pursuant to Patent Rule 3-4(a)

This dispute centers upon the scope of the production requirement imposed by P. R. 3-4(a). P. R. 3-4(a) provides that, with service of the invalidity contentions, "the party opposing a claim of patent infringement must produce or make available for inspection and copying:

> (a) Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P. R. 3-1(c) chart."

Plaintiffs argue that the Court should compel Vigilant to comply with P. R. 3-4(a) and produce its source code. Specifically, Plaintiffs contend that among the 21 "technical" documents produced by Vigilant, only two describe the functionality of the accused software, and that those two documents do not provide sufficient descriptions of the operation of any aspects or elements of the accused software. In response, Vigilant argues that the plain text of P. R. 3-4(a) mentions "source code" but does not *require* its production because the disjunctive "or" authorizes seven distinct categories of documents by which Vigilant can meet P. R. 3-4(a). Thus, Vigilant contends, it is not obligated to produce source code because the Plaintiffs have not explained why source code is necessitated in addition to Vigilant's production of other documents thus far. The Court rejects Vigilant's narrow reading of the local patent rules. Vigilant's "grammatical" opposition to producing its source code would, if accepted by the Court, likely close the door to the production of source code in this and all future patent infringement cases.

The United States District Courts for the Northern District of California and Southern District of California have addressed the scope of their respective Patent Local Rule 3.4(a), which is nearly identical to this District's P. R. 3-4(a) and was the source from which this District's

3

P. R. 3-4(a) was originally crafted. *See, e.g.*, *NessCap Co., Ltd. v. Maxwell Technologies, Inc.*, 2008 U.S. Dist. LEXIS 3357, 2008 WL 152147 (S.D. Cal. Jan. 16, 2008); *IXYS Corp. v. Advanced Power Tech., Inc.*, 2004 U.S. Dist. LEXIS 10934, 2004 WL 1368860 (N.D. Cal. June 16, 2004). In *NessCap*, the Southern District held that its Patent Local Rule 3.4(a) requires "the alleged infringer to produce 'any and all documents describing the operation or structures of [the patentee's] accused devices. . . .'" *See, e.g.*, *NessCap Co.*, 2008 U.S. Dist. LEXIS 3357, 2008 WL 152147 at *8 (quoting *IXYS Corp.*, 2004 U.S. Dist. LEXIS 10934, 2004 WL 1368860 at *3); *I-Flow Corp. v. Apex Medical Technologies, Inc.*, 250 F.R.D. 508, 511 (S.D. Cal. 2008) (agreeing with the interpretation of Rule 3.4(a) in *NessCap*). The Court further explained that its Rule 3.4(a) requires "the responding party to provide the raw data (source code, schematics, formulas, etc.) sufficient to show the operation of the accused aspects of the products in order to allow the patentee to make **it's own** determinations as to infringement." *NessCap Co.*, 2008 U.S. Dist. LEXIS 3357, 2008 WL 152147 at *10 (citing *McKesson Info. Solutions LLC v. Epic Sys. Corp.*, 495 F. Supp. 2d 1329, 1334 (N.D. Ga. 2007) (emphasis in original)).

This Court agrees with its sister courts in California. This District's P. R. 3-4(a) requires the alleged infringer to produce any and all documents describing the operation of any aspects or elements of an accused instrumentality. P. R. 3-4(a) clearly covers source code, regardless of what additional materials may exist to disclose the functionality of the technology at issue. Indeed, the local patent rules mitigate the "tension between the necessity for orderly and complete discovery on the one hand, and the desire of litigants to attain important tactical advantages by delaying or avoiding disclosures of key elements of their case" on the other hand. *See Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 821 (E.D. Tex. 2009). Such rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and

information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Id.* at 822 (quoting *IXYS Corp.*, 2004 U.S. Dist. LEXIS 10934, 2004 WL 1368860 at *3; citing *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 849 (E.D. Tex. 2004)); *see also Herbert,* 441 U.S. at 176 (stating that the rules of discovery "are to be accorded a broad and liberal treatment to affect their purpose of adequately informing litigants in civil trials").

Importantly, the patent local rules "are not like other forms of discovery which require a formal request by the opposing party. Rather, it is the responsibility of the party itself to make disclosures that satisfy the Rules." *Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n*, 2005 U.S. Dist. LEXIS 37013, 2005 WL 1787421 at *3 (N.D. Cal. July 27, 2005). Vigilant's bare minimum production shirks this responsibility and its attempt to use a grammatically technical reading of P. R. 3-4(a) as a shield to avoid production of its source code offends the discovery principles driving this District's patent rules. P. R. 3-4(a) requires Vigilant to produce more than the bare minimum of what *it* believes is sufficient, including but not limited to any and all source code, specifications, schematics, flow charts, artwork, formulas, or other documentation in its possession.

In refusing to produce its source code, Vigilant frames Plaintiffs' allegation of insufficient production as a "bare assertion" that lacks explanation and "bears no declaration from counsel or anyone else on this point." (*See* Dkt. No. 271 at 5.) On the contrary, attached to Plaintiffs' Motion is a declaration by Monica Tavakoli, counsel for Plaintiffs, who declares that among the 21 documents produced by Vigilant, "only two describe the functionality of the software" and that those two documents "do not provide sufficient descriptions of the 'operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its P. R. 3-1(c) chart'

5

as required by P. R. 3-4(a)." (See Dkt. No. 263, Ex. M at ¶ 7.) While Vigilant argues that Plaintiffs have not detailed deficiencies in Vigilant's production thus far, it is Vigilant that has the burden to explain how its document production thus far satisfies P. R. 3-4(a). This it has clearly failed to do. It is undisputed that Vigilant is obligated to produce all source code, specifications, schematics, flow charts, artwork, formulas, or other documentation as required by P. R. 3-4(a) in its possession. Such documents are relevant to the Plaintiffs' claim of infringement and Vigilant does not advance any argument why such obligation is irrelevant, overly broad, or unduly burdensome or oppressive. Accordingly, the Court finds that Plaintiffs' motion to compel Vigilant to produce all source code, specifications, schematics, flow charts, artwork, formulas, or other documentation as required by P. R. 3-4(a) in its possession, should be and is hereby **GRANTED**.

    b. *Production of Documents in Response to Plaintiffs' First Set of Requests for Production*

Plaintiffs move the Court to compel Vigilant to produce to Plaintiffs' counsel all non-privileged documents responsive to Plaintiffs' document requests. In its Motion, Plaintiffs specifically mapped each request for production to topics related to their patent infringement claims against Vigilant. The Court finds these topics relevant to the Plaintiffs' claims of infringement. That having occurred, the burden shifts to Vigilant to demonstrate why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive. Vigilant has failed to meet this burden.

Vigilant indicated to Plaintiffs that it had collected several hundred thousand pages of responsive documents, but has refused to produce any documents unless Plaintiffs agreed to pay the production costs. Vigilant advances two reasons to justify its position. First, Vigilant asserts that because nothing *requires* it to produce source code, an "offer to produce predicated upon a

6

recompensing payment scarcely arises to the level of rebellious behavior that Plaintiffs portray." (*See* Dkt. No. 271.) Second, Vigilant asserts that such production would be expensive as the cost exceeds $10,000. While Vigilant, in its sur-reply, states that the "sticking point has been the unwillingness of the plaintiffs to compensate Vigilant for the costs of producing such a large amount of documents requested" (Dkt. No. 275 at 5), Vigilant also claims that it is not "advanc[ing] a legal argument that the cost of production should be shifted to Plaintiffs." (*Id.* at 4 (quotation omitted).) As a result, the Court finds that Vigilant essentially argues only that the discovery at issue is unduly burdensome or oppressive.

This argument fails. Vigilant does not provide any evidence in support of its asserted cost figure. Vigilant fails to consider the discovery cost against the needs of the case, the prior discovery in the case, the amount in controversy, and the importance of the issues at stake. Vigilant does not, in any manner, argue that the burden or expense outweighs the likely benefit of the discovery. Vigilant simply makes the assertion that the discovery cost is expensive because it exceeds $10,000. Such an isolated assertion does not meet the burden of showing why the discovery is unduly burdensome or oppressive. Accordingly, the Court finds that Plaintiffs' motion to compel Vigilant to produce all non-privileged documents in response to Plaintiffs' First Set of Requests for Product should be and is hereby **GRANTED**.

### III. Conclusion

Based on the foregoing, this Court reaffirms the principle of broad and liberal discovery underlying P. R. 3-4(a). This Court rejects the notion that P. R. 3-4(a) provides an excuse to withhold source code if some other material speaks to functionality. Rather, P. R. 3-4(a) imposes an affirmative obligation on the accused infringer to produce source code and all other relevant materials reasonably needed for the Plaintiff to understand *for itself* how the technology at issue

operates and functions. Vigilant has failed to meet the duty imposed on it by P. R. 3-4(a) and has offered only a threadbare excuse that would, if accepted, vitiate the rule altogether. Vigilant is **ORDERED** to produce its source code, in compliance with the Agreed Protective Order, and all other materials necessitated by P. R. 3-4(a) within ten days of the date of this Order. Vigilant is also **ORDERED** to produce and deliver, at its cost, all the materials requested by Plaintiffs under their First Request for Production within ten days of the date of this Order. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), Vigilant is further **ORDERED** to reimburse Plaintiffs for their costs and fees in bringing the matters contained in this Motion to the Court's attention, up to $10,000.

The Plaintiffs shall be **GRANTED** 45 days additional time from the date of this Order to complete discovery. Plaintiffs also move the Court to order Vigilant to appear for its 30(b)(6) deposition in the Dallas, Texas area to mitigate the prejudice caused by Vigilant's discovery delay. Plaintiffs' request is **GRANTED**. Vigilant is **ORDERED** to promptly appear for its 30(b)(6) deposition at any designated location within Dallas County or Tarrant County, Texas upon reasonable notice by Plaintiffs.

As an additional insight into the Court's conclusions set forth above, the Court is convinced that Vigilant's conduct is indefensible. The Court has not discussed herein other actions of Vigilant in this case which if reviewed specifically would only confirm this opinion. If Vigilant continues to pursue a similar approach in the future, it (and its counsel) should be prepared to show cause why sanctions should not be imposed.

**So ORDERED and SIGNED this 16th day of November, 2012.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE